UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JUSTIN L. WRIGHT | CIVIL ACTION NO. 20-0982 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| OUACHITA PARISH CORRECTIONAL CENTER, ET AL. | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Plaintiff Justin L. Wright, a former prisoner at Ouachita Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately July 30, 2020, under 42 U.S.C. § 1983. He names the following defendants: OCC, Warden Johnson, Warden Campbell, Investigator Murphy, Head Nurse Newman, OCC Staff, Domestic Task Force, Deputy Greer, Deputy Millstead, Lashon Wesley, Shun Chambers, Shayla Scott, Twalla, Shuron Amos, Darius Jenkins, Ashley Freeman, Ricky, The Wellspring, and Monroe Police Department.[1] For reasons below, the Court should dismiss Plaintiff's claims.

**Background**

Plaintiff claims that the Domestic Task Force allowed "people" to place a transmitter inside him, which caused his mouth to swell. [doc. # 1, pp. 3, 6]. Other "things" were injected in his body. *Id.* at 4. He feels the things moving through his body; they hurt his chest, stomach, eye, and nose. *Id.* "People" continue listening to him. *Id.* The Domestic Task Force talked to him through a device injected in his ear, trying to persuade him to enter a car and "set [him] up."

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[doc. # 8, p. 6]. When he slept, the Domestic Task Force would "break in" and place devices inside him. *Id.* The Domestic Task Force also robbed him and followed him everywhere he went, placing hidden cameras in every place he stayed. [doc. #s 1-2; 8, p. 5].

Plaintiff claims that Lashon Wesley "started all of this by lying and having these people" follow him. [doc. # 8, p. 4]. He suggests that Wesley is his alleged victim, but he maintains that he only hit her after she hit him first. He was charged because Wesley lied to the police about what happened. *Id.* He alleges that "they" let her "be a part of the Domestic Task Force." *Id.* at 5. He also claims that Wesley tried to kill him with the help of the Domestic Task Force and others. *Id.*

Plaintiff claims that Shun Chambers is a "part of the team" and that Chambers "showed and told these people how to get into" his house. *Id.* Plaintiff witnessed Chambers standing outside his house checking windows and doors and trying to enter. *Id.* Chambers was able to open "the door and windows" so "they could put cameras and hidden devices" in Plaintiff's clothes. *Id.*

Plaintiff claims that Shayla Scott, at the direction of the Domestic Task Force, would watch him. *Id.* at 5-6.

Plaintiff claims that Twalla "was with all of the foolishness herself" and asked him if he had a telephone. *Id.* at 6.

Plaintiff claims that, on April 12, 2020, Shuron Amos, a member of the Domestic Task Force, "was coming in on" him and then ran after Plaintiff, telling him to "wait a minute." *Id.*

Plaintiff claims that "they" persuaded Darius Jenkins and Ashley Freeman to place "things" in his clothes and tamper with his body. *Id.* at 7.

2

Plaintiff claims that a man named Ricky stole his door key, enabling "them" to place a camera in his residence. *Id.* at 8.

Plaintiff claims that The Wellspring sent people to follow him and failed to "stop these people or make things right . . . ." *Id.* at 9.

Plaintiff claims that members of the Monroe Police Department rode with "these people," yet the Monroe Police Department did not help him. *Id.*

Plaintiff claims that "some church people out of West Monroe" followed him. *Id.* at 10.

Plaintiff claims that, at OCC, Investigator Murphy did not allow him to speak to a sheriff's office to "press charges." *Id.* at 3. He suggests that he wanted to press charges against someone concerning the transmitter and other objects injected in his body. *Id.* at 4. Investigator Murphy told him to "speak with Monroe City about what has happened" or to speak with an attorney, but Plaintiff wished to speak to a sheriff's office or someone from "Ouachita Parish Internal Affairs." [doc. #s 1, pp. 4-5; 8, p. 1].

Plaintiff claims that he asked for an x-ray and a CAT scan at OCC, but he did not receive a response. [doc. #s 1, p. 3; 8, p. 3].

Plaintiff claims that the alleged device in his mouth caused his mouth to swell, irritated his gums and teeth, and caused puss which could have killed him if he swallowed it. [doc. # 8, p. 1]. He needed antibiotics. *Id.* He was not transported to "medical" and did not see a doctor. He faults Deputy Greer, claiming that the day after he requested care, Greer only gave him "IBU"[2] for five days. [doc. #s 1, p. 3; 8, p. 1].

Plaintiff claims that, on May 26, 2020, Deputy Millstead placed him in "Pod 6" or protective custody with family members of individuals he is "pressing charges against." [doc. #s

---

[2] Plaintiff suggests that "IBU" is Ibuprofen.

1, p. 3; 8, p. 2]. He told Millstead that he had enemies there, but Millstead still assigned him there. [doc. # 8, p. 2]. "They . . . put a hit on" him, and his life was in jeopardy when he walked to the shower. [doc. # 1, p. 3]. Other inmates could attack him because they could "pop open" their cell doors. *Id.*

Plaintiff claims that he could not buy food in protective custody. [doc. # 1, p. 3; 8, p. 3].

Plaintiff claims that officials refused his requests for hair and nail clippers. He was told, "we don't have them they [sic] broke." *Id.* at 4.

Plaintiff claims that "they" hold his mail. *Id.* at 5.

Plaintiff claims that OCC failed to maintain necessary legal material. [doc. # 8, p. 9].

Plaintiff was convicted of "domestic violence first offense." *Id.* at 8. He is no longer confined. [doc. #s 8, p. 8; 8-1].

Plaintiff "wants to be remove[d]." *Id.* at 6. He also seeks x-rays, his "money back for medical[,]" federal charges against "all the people . . . involved with this madness," restraining orders against "these people" and the Domestic Task Force, lie detector tests for himself and others to prove he is truthful, and the removal of the devices in his body while in the presence of people he trusts. *Id.*

## Law and Analysis

**1. Preliminary Screening**

Because Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action

5

in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Entities Unamenable to Suit**

Plaintiff names OCC, the Domestic Task Force, OCC Staff, and Monroe Police Department as defendants. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

These defendants do not qualify as juridical persons.[3] Accordingly, the Court should dismiss Plaintiff's claims against them.

---

[3] See *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . ."); *Henderson v. Mid*

6

If, by "staff" or "task force," Plaintiff means individuals other than those he identified in his pleadings, he does not identify these persons and does not address how each person was personally involved in depriving him of a constitutional right.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Accordingly, to the extent Plaintiff names the "staff" or "task force" as unidentified persons, the Court should dismiss Plaintiff's claims against them.

### 3. State Action

To state a claim under Section 1983, a plaintiff must allege that a defendant acted "under color" of state law. 42 U.S.C. § 1983. "Private individuals generally are not considered to act under color of law, *i.e.,* are not considered state actors . . . ." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).

Here, Plaintiff claims that Lashon Wesley "started all of this by lying and having these people" follow him. [doc. # 8, p. 4]. He suggests that Wesley is his alleged victim. He maintains that Wesley lied to the police about what happened. *Id.* He alleges that "they" let her "be a part of the Domestic Task Force." *Id.* at 5. He also claims that Wesley tried to kill him with the help of the Domestic Task Force and others. *Id.*

---

*States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . .").

7

"The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action." *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985). "[E]vidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case." *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017). Rather, "the plaintiff must show that the police in effecting the arrest acted in accordance with a preconceived plan to arrest a person merely because he was designated for arrest by the private party, without independent investigation. The action by the police constitutes an abdication of state authority to a private party that is sufficient to cause the private party's acts to become state action."[4] *Sims*, 778 at 1079 (internal quotation marks and quoted sources omitted).

Here, Plaintiff does not allege that he was arrested merely because Wesley designated him for arrest. Nor does he allege that the arresting officers failed to perform an independent investigation. See *Clark v. Thibodaux City*, 787 F. App'x 198, 201 (5th Cir. 2019). Rather, he alleges that he was arrested after an extensive—albeit allegedly unlawful—investigation by the Domestic Task Force.[5] While Wesley may have influenced the actions of the arresting officers, Wesley did not determine them. See *Moody*, 868 F.3d at 354.

---

[4] "For example, in *Smith v. Brookshire Bros., Inc.*, the plaintiffs showed that pursuant to a prearranged plan, the defendant, a grocery store, 'could have people detained [for shoplifting] merely by calling the police and designating the detainee.'" *Moody*, 868 F.3d at 353 (quoting *Smith v. Brookshire Bros, Inc.,* 519 F.2d 93, 94 (5th Cir. 1975) (per curiam)). "In *Bartholomew v. Lee*, on the other hand, the fact that 'the plaintiffs were arrested in part . . . at the request of the [mall] security personnel, and not *wholly* based on any independent observations of the officers,' was not enough to show joint action between the mall and the police." *Id.* (quoting *Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989) (alteration and emphasis in original)).

[5] He alleges, "these people have been following me since last year in July of 2019." [doc. # 8, p. 8].

8

"[A] private individual may [also] act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (addition in brackets). Here, Plaintiff alleges that "they" allowed Wesley to be a part of the Domestic Task Force and that the Domestic Task Force helped Wesley try to kill him. These allegations, however, are implausible and devoid of necessary detail.[6] He does not plausibly allege that Wesley and the Domestic Task Force conspired or that Wesley's actions can otherwise be fairly attributable to the state.[7] The Court should dismiss Plaintiff's claims against Wesley.

### 4. Fanciful Claims

Plaintiff alleges that numerous individuals, some he knows and others who live or lived near him, aided the Domestic Task Force in: placing a transmitter inside him; injecting "other things" in him which move through his body; listening to him; talking to him through a device injected in his ear; trying to persuade him to enter a car and "set [him] up"; breaking in his home when he slept to place devices in him; following him everywhere he went; and placing hidden cameras in every place he stayed.

As above, he claims that Shun Chambers is a "part of the team" and that Chambers "showed and told these people how to get into" his house. [doc. # 8, p. 5]. Plaintiff witnessed

---

[6] See *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985) (a plaintiff's "mere characterization" of a defendant's conduct "as conspiratorial or unlawful [does] not set out allegations upon which relief can be granted."); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has presented no specific facts showing an agreement between the private defendants and any state actor in this case.").

[7] See *Chaney v. Races & Aces*, 590 F. App'x 327, 330 (5th Cir. 2014) (finding, where the plaintiff alleged that a defendant "made false allegations about a crime committed by" him, that the plaintiff's bare allegation of a conspiracy was insufficient and that, therefore, his claim was frivolous).

Chambers standing outside the house checking windows and doors and trying to enter. *Id.* Chambers was able to open "the door and windows" so "they could put cameras and hidden devices" in Plaintiff's clothes. *Id.*

He claims that "they" persuaded Darius Jenkins and Ashley Freeman to place "things" in his clothes and tamper with his body. *Id.* at 7. He claims that a man named Ricky stole his door key, enabling "them" to place a camera in his residence. *Id.* at 8.

A "court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional[.] As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

In *Donahue v. Philipus*, 216 F.3d 1079 (5th Cir. 2000), for instance, the plaintiff alleged that a chief of police and "two unnamed San Antonio police officers placed an eavesdropping device in [the plaintiff's] residence." The court reasoned that the allegations "standing alone may not appear to be delusional or irrational[,]" but "when considered in the context of all the other allegations of cross-country stalking, wiretapping, and harassment by officials and private citizens," the claims became irrational or delusional.

Here, like in *Donahue*, Plaintiff's allegations, when considered in the context of his larger narrative, are fanciful and wholly incredible. The Court should dismiss them.[8]

---

[8] See *Thibeaux v. Cain*, 425 F. App'x 399 (5th Cir. 2011) (finding fantastic and wholly incredible a claim that the defendants implanted a wire in his body to monitor him); *Medley v. City of Amarillo, TX*, 198 F.3d 241 (5th Cir. 1999) (finding, where the plaintiff alleged that officers used "an electronic device to scan his neck for a transponder placed under his skin for identification purposes" that the claims were "fanciful and delusional and [] subject to dismissal as frivolous.") (omission in brackets); *Logan v. Homeland Sec.*, 802 F. App'x 838, 839 (5th Cir. 2020) (finding, where the plaintiff alleged that defendants conducted unauthorized monitoring of her, that her

**5. Conclusory Claims**

Plaintiff claims: that Shayla Scott, at the direction of the Domestic Task Force, would watch him; that Twalla asked him if he had a telephone; that Shuron Amos, a member of the Domestic Task Force, "was coming in on" him and then ran when Plaintiff told him to "wait a minute"; that The Wellspring sent people to follow him and failed to "stop these people or make things right"; that members of the Monroe Police Department rode with "these people," yet failed to help him; and that "some church people out of West Monroe" followed him.

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, Plaintiff's claims are conclusory and generally unrelated to any legal cognizable right. He alleges, baldly, that Shayla Scott would watch him, but this allegation does not plausibly reflect, for instance, an unreasonable search or any form of harassment or stalking. Twalla asked him if he had a telephone, and Shuron Amos asked him to "wait a minute," but without more these allegations do not suggest unlawful activity.

He claims that The Wellspring sent people to follow him and failed to "stop these people or make things right[,]" but he does not identify the "people" to whom he refers or explain what he means by "make things right." Similarly, he claims that members of the Monroe Police

---

claim lacked an arguable basis in fact); *Williams v. Collins*, 988 F.2d 1212 (5th Cir. 1993) (finding fanciful a claim that officials placed a device on the plaintiff's chest at night); *Donahue*, 216 F.3d at 1079 (finding frivolous a claim that a "mayor personally planted wiretapping devices on [the plaintiff's] phones or stalked her").

Department rode with "these people" and failed to help him, but he does not identify a specific member of the Monroe Police Department—by name or by detail—and he does not explain how, when, or where the Monroe Police Department members should have helped him. He claims that "some church people out of West Monroe" followed him, but he does not disclose enough information to establish that the "church people" were state actors who violated his constitutional rights.

Plaintiff claims that, at OCC, he did not receive a response after he asked for an x-ray and a CAT scan, but he fails to identify a responsible defendant. [doc. #s 1, p. 3; 8, p. 3]. He also claims without elaborating that he could not buy food in protective custody, but he does not identify a responsible defendant, seek cognizable relief, or provide enough detail to state a plausible conditions-of-confinement claim.[9] [doc. # 1, p. 3; 8, p. 3].

Plaintiff names Warden Johnson and Head Nurse Newman as defendants, but he does not set forth any allegations against them.

Even construed liberally and in Plaintiff's favor, these claims are vague and conclusory. The Court should dismiss them.

**6. Cognizable Relief**

Plaintiff claims that at OCC, Investigator Murphy did not allow him to speak to a sheriff's office to "press charges" against someone concerning the transmitter and other objects allegedly injected in his body. *Id.* at 3-4. Investigator Murphy told him to "speak with Monroe City about what has happened" or to speak with an attorney, but Plaintiff wished to speak to a sheriff's office or someone from "Ouachita Parish Internal Affairs." [doc. #s 1, pp. 4-5; 8, p. 1].

---

[9] He does not claim that he lacked food.

He also claims that, at OCC, Deputy Millstead placed him in protective custody or "Pod 6" with family members of individuals he is "pressing charges against." [doc. #s 1, p. 3; 8, p. 2]. He told Millstead that he had enemies there, but Millstead still assigned him there. [doc. # 8, p. 2]. "They . . . put a hit on" him, and his life was in jeopardy when he walked to the shower. [doc. # 1, p. 3]. Other inmates could attack him because they could "pop open" their cell doors. *Id.*

Plaintiff claims that officials refused his requests for hair and nail clippers. He was told, "we don't have them they [sic] broke." He claims that "they" hold his mail. He also claims that OCC failed to maintain necessary legal material. [doc. # 8, p. 9].

Plaintiff does not seek any cognizable relief for these claims. He "wants to be remove[d]," but he has already been released from confinement at OCC. Moreover, his request (even if he remained confined) would only be cognizable in a habeas corpus proceeding.

He wants to bring federal charges against all defendants, but there is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).[10] Moreover, investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. To the extent Plaintiff demands that the Court investigate Defendants or charge them with crimes, the Court should deny the request as

---

[10] See *U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

frivolous.[11]

He seeks lie detector tests to prove he is truthful, but this is not a request for relief because it will not redress any of his injuries. Rather, Plaintiff seeks the tests to prove his claims.

His remaining requests for relief (medical care, a refund for lack of medical care, restraining orders against the Domestic Task Force and its henchmen, and the removal of devices in his body) are unrelated to these claims. Otherwise stated, Plaintiff fails to explain how obtaining these forms of relief will redress the injuries he suffered as a result of defendants' actions. The Court should dismiss these claims.

**7. Medical Care**

Plaintiff claims that the device in his mouth caused his mouth to swell, irritated his gums and teeth, and caused puss which could have killed him if he swallowed it. [doc. # 8, p. 1]. He needed antibiotics. *Id.* He was not transported to "medical" and did not see a doctor. He faults Deputy Greer, claiming that the day after he requested care, Greer only gave him "IBU"[12] for five days.

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a

---

[11] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal police agency. That said, Plaintiff should be aware that if a prosecuting authority investigates and chooses to forego filing charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); see, e.g. *Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

[12] Plaintiff suggests that "IBU" is Ibuprofen.

14

substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Greer's actions—providing "medical order IBU [sic]" and explaining "about the IBU [sic]," do not reflect deliberate indifference. Greer did not refuse to treat Plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Rather, Plaintiff simply disagrees with the care he did receive. See *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 345 (5th Cir. 2016) (finding no deliberate indifference where an official provided only Ibuprofen one day after the inmate requested medical treatment and did not investigate the "origin of his pain," and concluding that "failure to take . . . additional pain management measure[s] does not amount to deliberate indifference.") (addition in brackets).

Writing, "medical order IBU," Plaintiff suggests that a medical professional or someone other than Greer prescribed or ordered the "IBU." In this respect, he does not allege that Greer failed to relay his requests for medical care to a medical professional.

Plaintiff complains that he was not "transferred to medical." However, even if he named the medical professional who ordered the "IBU" as a defendant, he does not allege that the medical professional failed to consult his medical records and requests for care before providing "IBU."[13] Moreover, Plaintiff is not constitutionally entitled to see the medical professional of his choice or to "the best [care] that money could buy . . . ." See *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Saldivar v. Davis*, 698 F. App'x 198, 199 (5th Cir. 2017) ("Saldivar's

---

[13] See *Petzold v. Rostollan*, 946 F.3d 242, 250–51 (5th Cir. 2019) ("[B]ecause medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied. Under governing precedent, imperfect treatment does not equal denied treatment. And a disagreement with recommended treatment is generally insufficient to show deliberate indifference."); *Kirby v. Johnson*, 243 F. App'x 877, 879 (5th Cir. 2007) (finding no deliberate indifference where an official discontinued the plaintiff's medications without "without sufficient examination of his medical records and without thorough medical examinations.").

contention that she was denied medical care because she was not seen by the prison doctor, instead of the prison nurse, until 10 days after her fall does not amount to deliberate indifference.").

Finally, Plaintiff claims that he was charged for care even though he was never "transferred to medical." "There is . . . no general constitutional right to free health care[,]" and "[c]harging inmates for medical care, furthermore, is not per se unconstitutional." *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001) (cited with approval by *Morris v. Livingston*, 739 F.3d 740, 749 (5th Cir. 2014) (reasoning that the plaintiff did not plead "facts to show that the health care services fee" he paid acted "as a functional denial of medical care . . . .")). "Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim." *Farrakhan v. Johnson*, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) (unpublished) (cited with approval by *Morris*, 739 F.3d at 748). Here, Plaintiff does not claim that he was refused care because he could not pay; rather, he simply claims that he was charged.

The Court should dismiss these claims.

**8. Responding to Grievances**

Plaintiff claims that Warden Campbell responded erroneously to his administrative-remedy-process ("ARP") grievance. [doc. # 8, p. 4]. In his grievance, Plaintiff maintained that "medical" lied "about seeing" him. *Id.* Campbell allegedly responded that he investigated and found that Plaintiff "was seen on May 23, 2020, by Deputy Greer for the device in [his] ear." *Id.*

A prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Alexander v.*

*Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. See *Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claim.

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Justin L. Wright's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

18

**(14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 21st day of October, 2020.

_____
Karen L. Hayes
United States Magistrate Judge